UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**MELVIN J. CARVER,**
    Plaintiff,

v.

**MARTIN J. O'MALLEY,
Commissioner of the Social
Security Administration,**
    Defendant.

**Case No. 2:23-cv-1214-CLM**

## MEMORANDUM OPINION

Melvin Carver seeks supplemental security income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Carver's application in an opinion written by an Administrative Law Judge ("ALJ"), and the SSA's Appeals Council denied Carver's request for review.

Carver argues: (1) that substantial evidence doesn't support the ALJ's determination that Carver does not meet or equal Listing 12.03; (2) that the Appeals Council erred in not granting Carver's request for review based on new evidence submitted to it; and (3) that the ALJ erred in not ordering a consultative psychological examination. The court finds that neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the Commissioner's denial of SSI.

### I.   STATEMENT OF THE CASE

#### A.   Carver's Disability, as told to the ALJ

Carver was 31 when he filed his SSI application. Carver has a high school education and has completed one year of community college. (R. 54, 295). He last worked for the City of Birmingham cutting grass, planting flowers, and weed eating. (R. 100).

Carver claimed in his disability report that he suffered from Bipolar Disorder Type 1 and schizoaffective disorder. (R. 294). At the ALJ hearing, Carver testified that his ability to work is most impaired by anxiety attacks and sudden thoughts that God is sending him on a mission to do something. (R. 105). Carver also says that he will sometimes sleep for two days straight and hallucinate seeing a black panther in the mirror. (R. 106).

Carver's mom testified that Carver has anxiety trigger points that cause him to yell, scream, and pace around. (R. 111). Those trigger points include Carver reflecting on the fact that he cannot do normal things and being around other people, including relatives. (*Id.*).

Carver has been hospitalized several times for his mental health conditions, but his last hospitalization was in March 2021. (R. 104). He currently receives treatment for his mental health conditions at Eastside Mental Health and gets a monthly shot of Abilify, which Carver says sometimes cause him to have seizures. (R. 101–02). Carver also takes Buspar for anxiety and Trazodone for insomnia. (R. 105).

Carver lives in an apartment owned by his mother and is there by himself 70 to 85% of the time. (R. 100–01). Carver has a driver's license but doesn't drive because his license was suspended over unpaid traffic tickets. (R. 101). On a good day, Carver mainly sits at home spending time on his phone and watching YouTube. (R. 107). Carver also likes music and has gone on runs and played basketball to release his anxiety. (R. 112).

### B.     Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |

| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.   Carver's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.900(a)(1-4).

Carver applied for SSI in February 2021, alleging that he could not work because of several ailments, including bipolar and schizoaffective disorders.

3

After receiving an initial denial in May 2021, Carver requested a hearing, which the ALJ conducted in July 2022. The ALJ ultimately issued an opinion denying Carver's claims in September 2022.

At Step 1, the ALJ determined that Carver was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined Carver suffered from the following severe impairments: schizoaffective disorder-bipolar type and personality disorder and DAA (amphetamine, opioid and cannabis, ecstasy, Percocet) abuse.

At Step 3, the ALJ found that none of Carver's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Carver's residual functional capacity.

The ALJ determined that Carver had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

- Carver can never climb ladders, ropes, or scaffolds, nor should he work at unprotected heights or with hazardous machinery.

- Carver can understand, remember, carry out and make simple routine and repetitive instructions, tasks, and decisions consistent with unskilled work.

- Carver can maintain concentration, persistence, and pace for two-hour periods for such tasks.

- Carver can have no work-related interaction with the public and can have occasional work-related interactions with coworkers, but no work which requires teamwork or coordination with others.

- Carver can have occasional workplace changes that are gradually introduced and should not have any assembly line production requirements.

- Carver should not have any commercial driving or work around large open bodies of water.

At Step 4, the ALJ found that Carver could not perform his past relevant work. At Step 5, the ALJ determined that Carver could perform jobs, such as kitchen helper, hotel housekeeper, and auto detailer that exist in significant numbers in the national economy and thus Carver was not disabled under the Social Security Act.

### D. The Appeals Council Decision

Carver, who was unrepresented at the ALJ hearing, obtained counsel and requested an Appeals Council review of the ALJ's decision. Carver's counsel sent new evidence to the Appeals Council, which included opinion evidence from Yuliya Spencer, the CRNP who treated Carver at Eastside Mental Health. (R. 85–92). The Appeals Council did not exhibit this evidence from Spencer, finding that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2). The Appeals Council then denied Carver's request for review. So the ALJ's decision denying Carver SSI became the final decision of the SSA Commissioner.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III.   LEGAL ANALYSIS

Carver makes three arguments. First, he argues that the ALJ's determination that he did not meet or equal Listing 12.03 is not supported by substantial evidence. Second, he asserts that the Appeals Council erred in not granting his request for review based on new evidence that he presented to it. Finally, he contends that the ALJ erred in not ordering a consultative psychological examination. The court will address each argument in turn.

#### A.   Listing 12.03

At Step 3, if a claimant has an impairment that meets or equals a listing in 20 CFR Part 404, Subpart P, Appx. 1 and satisfies the SSA's duration requirement, the ALJ must presume that he is disabled. *See* 20 C.F.R. § 416.920(d). Carver says that the ALJ should have found that he met Listing 12.03 (schizophrenia spectrum and other psychotic disorders). To satisfy Listing 12.03, Carver had to show that his mental impairments met either the requirements of both paragraphs A and B of Listing 12.03 or the requirements of both paragraphs A and C of Listing 12.03. *See* 20 CFR 404, Subpart P, Appx. 1, § 12.00A(2). The ALJ found that Carver's mental impairments didn't satisfy either the paragraph B or C criteria. (R. 46–48).

A claimant's mental impairments satisfy the paragraph B criteria when the mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of [these] four areas of mental functioning":

- Understand, remember, or apply information;
- Interact with others;
- Concentrate, persist, or maintain pace; and
- Adapt or manage oneself.

20 CFR 404, Subpart P, Appx. 1, § 12.03B. A claimant has a marked limitation when the claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. 20 CFR 404, Subpart P, Appx. 1, § 12.00F(2). A claimant has an extreme limitation when the claimant cannot function in this area independently, appropriately, effectively, and on a sustained basis. *Id.*

To satisfy the paragraph C criteria, a claimant must have a medically documented history of the existence of his mental disorder over a period of at least 2 years. 20 CFR 404, Subpart P, Appx. 1, § 12.03C. There must also be evidence of:

- Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; *and*

- Marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.

*Id.*

Citing the record, including Carver's treatment notes and hearing testimony, the ALJ found that Carver didn't satisfy the paragraph B criteria because he had only moderate limitations in the four areas of mental functioning. (R. 46–48). The ALJ then stated that Carver didn't meet the paragraph C criteria because "[t]he record does not establish that [Carver] has only marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (R. 48). To support this finding, the ALJ noted that Carver "functions outside a highly supportive living situation and is adequately able to adapt and care for himself with few limitations." (*Id.*).

Despite the ALJ providing specific reasons for finding that Carver doesn't meet Listing 12.03, Carver doesn't explain which of the ALJ's findings aren't supported by substantial evidence. He instead merely cites the requirements for meeting Listing 12.03, block quotes several of his medical records, and says that "[t]here is no reasonabl[e] inference in the record on appeal to be made that plaintiff would not meet Listing 12.03 had the ALJ properly considered his claim under this listing." (Doc. 7, p. 12). Thus, both the court and the Commissioner are left wondering how the ALJ erred. Did the ALJ err because the evidence shows Carver satisfied both the paragraph B and paragraph C criteria? Or does the evidence just show that Carver meets the paragraph B criteria? If so, how does Carver meet the paragraph B criteria?

7

Does Carver have one extreme limitation or two marked limitations in the four areas of mental functioning? Carver's brief doesn't say, so the court finds that Carver has effectively abandoned his argument that substantial evidence doesn't support the ALJ's Step 3 finding. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue.").

Carver does specifically assert that the ALJ erred in focusing her Step 3 analysis on Carver's drug abuse. But the ALJ's Step 3 analysis does not imply that the ALJ would have found Carver met Listing 12.03 but for his drug abuse. Instead, the ALJ found that while Carver had greater limitations when he was abusing drugs and non-compliant with his medication, "the totality of the record" established that Carver had no more than moderate limitations in each of the four areas of mental functioning. (R. 46–48). Substantial evidence supports these findings. For example, in addressing Carver's ability to understand, remember, or apply information, the ALJ pointed out that during the ALJ hearing Carver understood and responded appropriately to questions about his work history and impairments. (R. 46, 95–108). And when not using drugs, Carver had an appropriate memory and the ability to follow through with medical treatment. (R. 46, 476–78, 499, 503, 519, 524–25).

As for Carver's ability to interact with others, the ALJ recognized that Carver and his mother testified that Carver struggled in this area. But the ALJ noted that Carver's medical records from when he was medication compliant and not using drugs showed that he presented as cooperative, with a calm manner, and appropriate behavior. (R. 453, 456, 477–78, 500, 524). In assessing Carver's ability to concentrate, persist, and maintain pace, the ALJ recognized that Carver once reported that his medications caused difficulty with focus and that during an intake for inpatient treatment Carver did not have appropriate attention. (R. 47). But the ALJ found that Carver had only a moderate limitation because his examinations generally showed appropriate attention. (R. 453, 455–56, 462, 477).

8

The ALJ finally explained that while Carver had some limitations in adapting or managing himself, especially during times of substance abuse, these limitations were only moderate. (R. 47–48). To support this finding, the ALJ pointed out that Carver's medical records routinely noted that he presented with appropriate grooming, hygiene, and behavior. (R. 477, 503, 520, 524). In short, Carver hasn't shown that the ALJ improperly referenced his drug abuse in evaluating his claim at Step 3, and substantial evidence supports the ALJ's findings that Carver had only moderate limitations in the four areas of mental functioning.

### B.    Appeals Council

Carver next asserts that the Appeals Council erred in denying his request for review after he submitted new evidence from Yuliya Spencer, the CRNP who treated Carver at Eastside Mental Health, for the Appeals Council to consider. A Social Security claimant is allowed to present new evidence at each stage of the administrative process. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

1. <u>Background</u>: Spencer is a CRNP who has been treating Carver at Eastside Mental Health since 2018. After receiving the ALJ's unfavorable decision, Carver retained counsel who asked Spencer to fill out two forms related to Carver's impairments. (R. 85–92). The first form asked Spencer whether she believed Carver met or equaled Listing 12.03. (R. 86). Spencer answered 'yes,' seemingly asserting that Carver's impairments satisfied both the paragraph B and paragraph C criteria. (*Id.*). She indicated that Carver had medical documentation of delusions or hallucinations and then circled interact with others and concentrate, persist, or maintain pace when told that Carver must have an extreme limitation of one, or marked limitation of two, of the areas of mental functioning to meet the paragraph B criteria. (*Id.*). Spencer then circled that Carver met both requirements of the paragraph C criteria. (*Id.*).

9

The second form was a medical source opinion form that asked Spencer the degree of limitation of Carver's mental functioning. (R. 89–90). Spencer said that Carver had marked limitations in these areas:

- Respond appropriately to supervisors;
- Respond appropriately to customers or other members of the general public;
- Use judgment in simple, one or two step, work-related decisions;
- Deal with change in a routine work setting;
- Understand, remember, and carry out detailed or complex instructions;
- Respond to customary work pressures; and
- Maintain attention, concentration, or pace for periods of at least two hours.

(*Id.*). Spencer found that Carver had moderate limitations in understanding, remembering, and carrying out simple one or two step instructions; maintaining social functioning; and maintaining activities of daily living. (*Id.*).

Spencer then stated that Carver cannot manage benefits in his own best interest and that he has had restrictions since 2020. (R. 90). In support of this opinion, Spencer pointed out that Carver had lost his job because of erratic behavior and had had multiple hospitalizations since 2020. (*Id.*). Spencer finally noted that she believed that there would be no change in Carver's limitations if he stopped using drugs and alcohol and that Carver had been suffering from these problems and limitations since at least 2021. (*Id.*).

Carver submitted these forms to the Appeals Council. (R. 2). But the Appeals Council did not exhibit this evidence, finding that there was no reasonable probability that it would change the outcome of the ALJ's decision. (*Id.*). The Appeals Council then denied Carver's request for review. (R. 1–3).

2. <u>Analysis</u>: How this court reviews an argument that the Appeals Council erred in not granting review based on new evidence depends on how the Appeals Council handled the new evidence. If the Appeals Council refuses to consider the new evidence, the court reviews de novo whether the evidence should have been considered because it is new, material, and chronologically relevant. *See Washington*, 806 F.3d at 1320–21. If, however, the Appeals

Council considered the new evidence and still denied review, the court must consider only whether the new evidence renders the Commissioner's denial of benefits erroneous. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014).

Carver says that the Appeals Council did not review the records from Spencer or give them appropriate consideration. But in denying a request for review, the Appeals Council is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Id.* at 784. And here, the Appeals Council did not refuse to consider the records from Spencer but found that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2). So the court finds that the Appeals Council denied review only after considering the new evidence Carver presented to it. *See Goble v. Soc. Sec. Admin., Comm'r*, 2023 WL 2823401, at *8 & n.20 (11th Cir. Apr. 7, 2023) (Appeals Council considered new evidence when it found the new evidence didn't have a reasonable probability of changing the ALJ's decision).

Carver hasn't shown that the Appeals Council erred when it found that Spencer's opinions were unlikely to change the outcome of the ALJ's decision. The most important factors to the SSA in evaluating the persuasiveness of a medical opinion is its supportability and consistency. *See* 20 CFR § 416.920c(a). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 CFR § 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 416.920c(c)(2).

Spencer did not explain why she found that Carver satisfied the paragraph B and paragraph C criteria and met or equaled Listing 12.03. (R. 86). As stated, substantial evidence supports the ALJ's findings that Carver had only moderate limitations in the four areas of mental functioning and had more than minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. Thus, there was no reasonable probability that Spencer's opinion that Carver met Listing 12.03 would have changed the outcome of the ALJ's decision.

As for the medical source opinion, Spencer didn't identify which medical or clinical findings supported her assessment of Carver's functional limitations. (R. 89–90). And though Spencer pointed out that Carver lost his job because of erratic behavior and had multiple hospitalizations, the evidence that the ALJ cited supported her finding that Carver did not experience these behaviors when he received his Abilify injections and did not abuse drugs. (R. 49–52). Thus, Carver hasn't shown that there's a reasonable probability that Spencer's opinions would have changed the outcome of the decision or rendered the denial of benefits erroneous.

### C. Consultative Psychological Examination

Carver finally contends that the ALJ erred in not ordering a consultative psychological examination. An ALJ has a basic duty to develop a full and fair record. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). And when an ALJ fails to develop the record, a remand is necessary only if "the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.").

The record before the ALJ included Carver's treatment notes from Eastside Mental Health, medical records from his hospitalizations at UAB, hearing testimony, and prior administrative medical findings from the state agency psychological consultants. (R. 43–55). So the ALJ had enough information before her to make an informed decision and wasn't required to order a consultative psychological examination.

Nor has Carver shown that there are evidentiary gaps in the record that require the court to remand for further development of the record. Carver points out that the ALJ didn't have the benefit of Spencer's opinions and that the only opinions in the record were from state agency psychological

consultants who didn't examine Carver and didn't have access to all the medical evidence. These facts don't show unfairness or clear prejudice to Carver. Again, Carver has not shown that there was a reasonable probability that Spencer's opinions would have changed the outcome of the ALJ's decision. Plus, though a medical source's examining relationship with a claimant is a factor for an ALJ to consider in assessing a medical opinion, *see* 20 CFR § 416.920c(c)(3)(v), ALJs are no longer required to follow a hierarchy of medical opinions, 20 CFR § 416.920c(a). And Carver doesn't explain why the state agency psychological consultants' opinions along with the objective medical evidence didn't give the ALJ enough information to make an informed decision.

The court thus finds that the ALJ didn't need to order a consultative examination and that there is no need to remand this case for further development of the record.

## IV. CONCLUSION

Substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying Carver's request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on July 8, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE